1

2

3

4

5

6

7

8

9

10      UNITED STATES DISTRICT COURT

11          EASTERN DISTRICT OF CALIFORNIA

12

GENARO ANAYA-FERNANDEZ,             )    1:10-cv-01589 LJO-MJS HC
13                                  )
            Petitioner,             )    FINDINGS AND RECOMMENDATION
14                                  )    REGARDING PETITION FOR WRIT OF
      v.                            )    HABEAS CORPUS
15                                  )
BRENDA CASH, et al.,                )
16                                  )
            Respondents.            )
17   _____)

18

19         Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

20   pursuant to 28 U.S.C. § 2254. Respondent, Brenda Cash, as acting warden of California State

21   Prison, Los Angeles County is hereby substituted as the proper named respondent pursuant

     to Rule 25(d) of the Federal Rules of Civil Procedure.

22
**I.      BACKGROUND**
23
           Petitioner is currently in the custody of the California Department of Corrections
24
     pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his
25
     conviction by jury trial on February 7, 2008, for assault with intent to commit rape during the
26
     commission of a first degree burglary and forcible rape, in addition to sentencing
27
     enhancements imposed because Petitioner personally used a deadly and dangerous weapon,
28

1  and had committed a burglary prior to commission of the rape and suffered three prior serious

2  felony convictions. (Clerk's Tr. at 199-200.) Petitioner was sentenced to a total term of 76

3  years to life. (Id.)

4         On December 9, 2009, the California Court of Appeal, Fifth Appellate District, affirmed

5  the judgment of the trial court. (Lodged Doc. 4.) Petitioner filed a petition for review in the

6  California Supreme Court.  The petition was summarily denied on February 24, 2010. (Lodged

7  Doc. 6.)

8         On August 17, 2010, Petitioner filed the instant federal habeas corpus petition.

9  Petitioner raised a single claim for relief, namely, that the trial court's admission of prior sexual

10 offenses committed by Petitioner rendered his trial fundamentally unfair in violation of the

11 Fourteenth Amendment. (Pet., ECF No. 1.) On December 28, 2010, Respondent filed an

12 answer to the petition. (Answer, ECF No. 14.) Despite requesting extensions of time, Petitioner

13 did not file a traverse to the answer.

14 **II.    STATEMENT OF THE FACTS[1]**

15         On December 15, 2006, Doe, 23 years old, was living in a small house
   in Stanislaus County with her mother and father. At about 8:30 a.m., after her
16 mother left for work and her father went out to run errands, Doe heard a knock
   on the front door. Defendant was standing outside the front door with what
17 appeared to be a package or box and said he had a delivery for her father.
   When Doe opened the door, defendant suddenly pushed his way into the house
18 and came after her. Doe ran to the bathroom, seizing a kitchen knife as she
   fled. Defendant gained entry into the bathroom, hit Doe on the mouth and
19 forced her to remove her clothes. He told her to remove a tampon and shave
   her pubic area. When defendant pulled down his pants, he already had a
20 condom on. Defendant then held the kitchen knife to Doe's throat and raped
   her.
21
          When Doe's father returned home about 10 minutes later, he found Doe
22 on the bathroom floor wrapped in a towel, in shock, crying and screaming
   hysterically. He called 911 and police officers and an ambulance arrived.
23
   Doe gave a description of the rapist to police officers, who prepared a
24 composite drawing of the suspect. She told the police officers that the rapist
   was a white male who spoke broken English, approximately middle 30's to early
25 40's in age, medium build, and that he was dressed in mostly black clothing,
   including a black hooded sweatshirt, dark pants or sweatpants, and a black
26

27 _____

28         [1]The Fifth District Court of Appeal's summary of the facts in its December 9, 2009 opinion is presumed
   correct. 28 U.S.C. §§ 2254(e)(1).

1   baseball cap or beanie.[2] Doe provided further details of defendant's description,
2   including that he had dark eyes, a box-shaped face, and was wearing a ring. A
    photo of the composite drawing was placed in the local newspaper and the
3   police received several tips, based on which they created a series of photo
    lineups. Doe, however, was unable to identify anyone in these photographs.

4        Nearly nine months later, police received another anonymous tip. The
5   information enabled them to create a new photo lineup, which included a
    photograph of defendant. Viewing this lineup, Doe immediately identified
6   defendant. She started shaking and pointed to the photograph of defendant,
    saying "[t]hat's him, that's him" and "I'll never forget that face." Although Doe
7   had many nightmares about the rape, she testified that "[t]he rape is real and
    his face is real," and she believed that she would never be able to get rid of the
8   memory of his face.

9        Defense counsel argued at trial that Doe must have mistakenly identified
    defendant as the man who raped her, emphasizing that defendant is of Hispanic
10  descent and, moreover, according to the testimony of defendant's sister, Luz
    Juaregui, and defendant's ex-wife, G.A., defendant had tattoos all over his
11  body, including on his arms, neck, back and thighs. Ms. Juaregui and G.A. also
    testified that defendant's English was not very good, that he was hard to
12  understand, and that he never wore jewelry.

13       Over defendant's objections, the trial court allowed the jury to hear
    evidence of defendant's prior sexual crimes of attempted spousal rape. G.A.
14  testified that in 2001, while she and defendant were separated and a restraining
    order was in place, defendant came into her home at 2:45 a.m. and attempted
15  to rape her three times over the course of one night. Defendant had apparently
    been there earlier in the day to visit the children, but had left. G.A. testified in
16  2001 that she saw defendant leave, she locked the doors and he did not have
    permission to return. When defendant suddenly appeared in G.A.'s home at
17  2:45 a.m., she was surprised and said, "What are you doing here, didn't I tell
    you to leave." Defendant briefly spoke to G.A. about the children and asked for
18  a second chance in their relationship; then defendant began demanding sex.
    G.A. said no, and defendant said "he could make [her]" and he proceeded to
19  physically force himself on G.A. G.A. testified that she "just tried to keep [her]
    legs closed" and tried biting and hitting him with anything in reach "to get him
20  off of [her]." G.A. was able to fight him off during three separate physical
    assaults, and she also succeeded in calling 911. Defendant was convicted of
21  three counts of attempted spousal rape, one count of battery on a spouse, and
    he served time in prison for these offenses.

22       The charges against defendant were, in count 1, assault with intent to
    commit rape during the commission of a first degree burglary (§ 220, subd. (b)),
23  and, in count 2, forcible rape (§ 261, subd. (a)(2)). [6] The jury found defendant
    guilty of both counts, and also found true the special allegation that defendant
24  had used a deadly weapon, i.e., a knife (§ 12022, subd. (b)). The trial court
    thereafter found true the further allegation that defendant had three prior serious
25  felony convictions for purposes of the "Three Strikes" law (§§ 667, subds. (b)-(i),
    1170.12, subds. (a)-(d)). On July 3, 2008, defendant was sentenced to 75 years
26  to life on count 2, with a consecutive one-year sentence imposed for the

27  ─────────────────────

28       [2] Each of the four times that police had contact with defendant prior to his arrest, he was wearing black
    or dark clothing similar to what Doe described.

1
2
3
personal weapon use enhancement, for a total term of 76 years to life. The trial court imposed a term of 46 years to life on count 1, which sentence was to run concurrently with the sentence on count 2, but was also stayed pursuant to section 654. Defendant's timely appeal followed.

(Lodged Doc. 4.)

4

**III.    DISCUSSION**

5

**A.    Jurisdiction and Standard of Review**

6
7
8
9
10
On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA; thus, it is governed by its provisions.

11
12
13
14
15
Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

16
17
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

18
19
20
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

21
28 U.S.C. § 2254(d).

22
1.    Contrary to or an Unreasonable Application of Federal Law

23
24
25
26
27
28
A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general

1    standard may be applied in an unreasonable manner" <u>Panetti v. Quarterman</u>, 551 U.S. 930,

2    953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law"

3    requirement "does not demand more than a 'principle' or 'general standard.'" <u>Musladin v.</u>

4    <u>Lamarque</u>, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application

5    of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions

6    must provide a governing legal principle (or principles) to the issue before the state court.

7    <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003).   A state court decision will involve an

8    "unreasonable application of" federal law only if it is "objectively unreasonable." <u>Id.</u> at 75-76,

9    quoting <u>Williams</u>, 529 U.S. at 409-10; <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002). In

10   <u>Harrington v. Richter</u>, the Court further stresses that "an unreasonable application of federal

11   law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing

12   <u>Williams</u>, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim

13   lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

14   the correctness of the state court's decision." <u>Id.</u> at 786 (citing <u>Yarborough v. Alvarado</u>, 541

15   U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in

16   reading outcomes in case-by-case determinations." <u>Id.</u>; <u>Renico v. Lett</u>, 130 S. Ct. 1855, 1864

17   (2010). "It is not an unreasonable application of clearly established Federal law for a state

18   court to decline to apply a specific legal rule that has not been squarely established by this

19   Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009), quoted by

20   <u>Richter</u>, 131 S. Ct. at 786.

21                    2.      <u>Review of State Decisions</u>

22         "Where there has been one reasoned state judgment rejecting a federal claim, later

23   unexplained orders upholding that judgment or rejecting the claim rest on the same grounds."

24   <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).  This is referred to as the "look through"

25   presumption.  <u>Id.</u> at 804; <u>Plascencia v. Alameida</u>, 467 F.3d 1190, 1198 (9th Cir. 2006).

26   Determining whether a state court's decision resulted from an unreasonable legal or factual

27   conclusion,"does not require that there be an opinion from the state court explaining the state

28   court's reasoning." <u>Harrington</u>, 131 S. Ct. at 784-85. "Where a state court's decision is

1 unaccompanied by an explanation, the habeas petitioner's burden still must be met by

2 showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now

3 holds and reconfirms that § 2254(d) does not require a state court to give reasons before its

4 decision can be deemed to have been 'adjudicated on the merits.'").

5 Harrington instructs that whether the state court decision is reasoned and explained,

6 or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d)

7 is the same: "Under § 2254(d), a habeas court must determine what arguments or theories

8 supported or, as here, could have supported, the state court's decision; then it must ask

9 whether it is possible fairminded jurists could disagree that those arguments or theories are

10 inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong

11 case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

12 (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in

13 cases where there is no possibility fairminded jurists could disagree that the state court's

14 decision conflicts with this Court's precedents." Id. To put it yet another way:

15 As a condition for obtaining habeas corpus relief from a federal court, a
state prisoner must show that the state court's ruling on the claim being
16 presented in federal court was so lacking in justification that there was an error
well understood and comprehended in existing law beyond any possibility for
17 fairminded disagreement.

18 Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the

19 principal forum for asserting constitutional challenges to state convictions." Id. at 787. It

20 follows from this consideration that § 2254(d) "complements the exhaustion requirement and

21 the doctrine of procedural bar to ensure that state proceedings are the central process, not

22 just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes,

23 433 U.S. 72, 90 (1977).

24 3.    Prejudicial Impact of Constitutional Error

25 The prejudicial impact of any constitutional error is assessed by asking whether the

26 error had "a substantial and injurious effect or influence in determining the jury's verdict."

27 Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22

28 (2007) (holding that the Brecht standard applies whether or not the state court recognized the

1   error and reviewed it for harmlessness).  Some constitutional errors, however, do not require

2   that the petitioner demonstrate prejudice.  <u>See</u> <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310

3   (1991); <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas

4   petition governed by AEDPA alleges ineffective assistance of counsel under <u>Strickland v.</u>

5   <u>Washington</u>, 466 U.S. 668 (1984), the <u>Strickland</u> prejudice standard is applied and courts do

6   not engage in a separate analysis applying the <u>Brecht</u> standard.  <u>Avila v. Galaza</u>, 297 F.3d

7   911, 918, n. 7 (2002);  <u>Musalin v. Lamarque</u>, 555 F.3d at 834.

8   **IV.    REVIEW OF CLAIM**

9        **A.    Admission of Propensity Evidence in the Form of Prior Sexual Offenses**

10        Petitioner alleges that his constitutional rights to a fair trial and due process of law were

11   violated due to the admission of his prior sexual offenses during trial.

12             1.    State Court Decision

13        Petitioner presented this claim on direct appeal which was denied in a reasoned

14   decision by the Fifth District Court of Appeal and summarily denied by the California Supreme

15   Court.  Because the California Supreme Court's opinion is summary in nature, this Court

16   "looks through" that decision and presumes it adopted the reasoning of the California Court

17   of Appeal, the last state court to have issued a reasoned opinion.  <u>See</u> <u>Ylst v. Nunnemaker</u>,

18   501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through"

19   presumption that higher court agrees with lower court's reasoning where former affirms latter

20   without discussion); <u>see also</u> <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000)

21   (holding federal courts look to last reasoned state court opinion in determining whether state

22   court's rejection of petitioner's claims was contrary to or an unreasonable application of

23   federal law under 28 U.S.C. § 2254(d)(1)).

24        In denying Petitioner's claim, the appellate court explained:

25        I. Trial Court Properly Admitted Evidence of Prior Sexual Offenses

26             Defendant contends the trial court abused its discretion in admitting the
        evidence of the prior sexual offenses. We disagree.

27

28             The evidence was admitted under Evidence Code section 1108,
        subdivision (a), which provides as follows: "In a criminal action in which the
        defendant is accused of a sexual offense, evidence of the defendant's

commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." This section "authorizes the admission of evidence of a prior sexual offense to establish the defendant's propensity to commit a sexual offense, subject to exclusion under Evidence Code section 352." (People v. Lewis (2009) 46 Cal.4th 1255, 1286.) Evidence Code section 1108 was intended to provide the trier of fact in a sex offense case "the opportunity to learn of the defendant's possible disposition to commit sex crimes." (People v. Falsetta (1999) 21 Cal.4th 903, 915.)

Evidence Code section 1108 expressly permits trial courts to exclude evidence of other sexual crimes under Evidence Code section 352. Evidence Code section 352 provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." In determining whether to admit evidence under Evidence Code section 1108, trial courts "engage in a careful weighing process under [Evidence Code] section 352." (People v. Falsetta, supra, 21 Cal.4th at p. 916-917.) "Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (Id. at p. 917.)

Here, defendant claims that the trial court abused its discretion because allegedly the prejudicial effect of the evidence of other sexual crimes greatly outweighed its probative value. We review a trial court's decision to admit evidence of prior sexual offenses under an abuse of discretion standard. (People v. Wesson (2006) 138 Cal.App.4th 959, 969.) A trial court enjoys broad discretion under Evidence Code sections 352 and 1108, and its ruling will not be disturbed on appeal "'unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]'" (People v. Lewis, supra, 46 Cal.4th at p. 1286; People v. Rodrigues (1994) 8 Cal.4th 1060, 1124.)

We find no abuse of discretion in the present case. The probative value of the evidence to show defendant's propensity to commit such violent sexual crimes is strong. The prior offenses were not unreasonably remote in time since they were committed only five years prior to the rape of Doe. There were also basic similarities in the two cases. In the 2001 attempts to commit spousal rape as well as in the instant rape case, the victims were young women in their early to mid-twenties, and both were at home alone--which fact was apparently known to defendant. Additionally, in both cases defendant used a ruse to get the women to initially lower their guard. That is, with G.A., he claimed he was there in the middle of the night to discuss their children. With Doe, defendant pretended to have a package he was delivering to her father. And of course, in both cases defendant used force to sexually assault each victim.

Additionally, there was little likelihood of undue prejudice. As the trial court correctly noted, this was not a situation "where the prior [was] so much

more inflammatory [than] the current case that it would be unfair to have it presented." Rather, the trial court's assessment was that both the prior and current offenses were at "about the same level of seriousness," and there was no reason to believe there would be any jury confusion. Nor was it likely the jury would try to punish defendant for the past crimes, because the evidence made clear that defendant was convicted and went to prison for the prior offenses.

Defendant argues the prior sex crimes evidence was unduly prejudicial because it was used to make up for the prosecution's "shaky identification evidence." We disagree. The evidence identifying defendant as the one who raped Doe was more than sufficient to support the conviction. Among other things, when Doe saw defendant in the last photo lineup, her firm reaction was "[t]hat's him, that's him," and she identified him once again in court and unequivocally asserted that she could never forget that face. The jury was entitled to fully credit her testimony. Whatever minor inconsistencies there may have been in her description, they did not undermine the convincing nature of her positive identification of defendant. Since there was strong and solid evidence to identify defendant as the rapist, we reject defendant's contention that the prior crimes evidence were used by the prosecutor to overcome a purported lack of evidence of identity.

We conclude there was nothing arbitrary or capricious in the trial court's determination that the prior sexual assault evidence was admissible. The trial court went through the weighing process of Evidence Code section 352 and made a reasonable decision. Defendant has failed to show any error or abuse of discretion, much less one that resulted in a miscarriage of justice.

For the same reasons, we reject defendant's parallel claim that admission of the prior sexual offenses denied him due process. Defendant has not shown any error occurred that rendered the trial fundamentally unfair. (People v. Partida (2005) 37 Cal.4th 428, 431-432 [trial court's error in failing to exclude evidence pursuant to Evid. Code, § 352 objection "rises to the level of a due process violation only if it renders the trial fundamentally unfair"].) As noted, the prior sexual crimes evidence was properly admitted after the trial court undertook the weighing process of Evidence Code section 352, and the trial court reasonably concluded that the probative value of that evidence outweighed any risk of undue prejudicial effect. Under such circumstances, the admission of "propensity" evidence under Evidence Code section 1108 plainly did not violate due process. (People v. Lewis, supra, 46 Cal.4th at p. 1289; People v. Falsetta, supra, 21 Cal.4th at p. 917.)

In summary, defendant's challenge to his conviction on count 2 of forcible rape is without merit and we affirm the conviction.

(See Lodged Doc. 4.)

        2.    Propensity Evidence

As stated above, Petitioner claims the admission of evidence of prior acts of sexual assault violated his due process rights. Petitioner is only entitled to relief if he shows that in upholding the introduction of the propensity evidence the California Court of Appeal contradicted or unreasonably applied clearly established federal law, as determined by the

1  Supreme Court of the United States. See 28 U.S.C. § 2254(d). In Estelle v. McGuire, 502 U.S.

2  62, 75 n. 5, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991), the Supreme Court expressly refused

3  to determine whether the introduction of prior crimes evidence to show propensity to commit

4  a crime would violate the Due Process Clause. Id. ("Because we need not reach the issue,

5  we express no opinion on whether a state law would violate the Due Process Clause if it

6  permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.");

7  see also Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006) ("Estelle expressly left this

8  issue an 'open question'"). Because the Supreme Court has specifically declined to address

9  whether the introduction of propensity evidence violates due process, Petitioner lacks the

10 clearly established federal law necessary to support his claims. Id.; see also Mejia v. Garcia,

11 534 F.3d 1036, 1046-47 (9th Cir. 2008) (relying on Estelle and Alberni and concluding that the

12 introduction of propensity evidence under California Evidence Code § 1108 does not provide

13 a basis for federal habeas relief, even where the propensity evidence relates to an uncharged

14 crime); Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (The Supreme Court "has

15 not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence

16 constitutes a due process violation sufficient to warrant issuance of the writ.").

17         AEDPA dictates that a district court may not grant habeas relief unless the state court

18 decision was contrary to, or an unreasonable application of, clearly established federal law

19 as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). Consequently, in the

20 absence of Supreme Court precedent stating the admission of evidence of prior acts violates

21 due process, Petitioner cannot satisfy this requirement. See Alberni, 458 F.3d at 866-67.

22         The California Court of Appeal decision denying this claim was not contrary to clearly

23 established Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief.

24 **V.     FINDINGS AND RECOMMENDATIONS**

25         Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be

26 DENIED with prejudice. It is further recommended that the Clerk of Court be directed to enter

27 judgment.

28         This Findings and Recommendation is submitted to the assigned District Judge,

U.S. District Court
E. D. California

-10-

1   pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being

2   served with the Findings and Recommendation, any party may file written objections with the

3   Court and serve a copy on all parties.  Such a document should be captioned "Objections to

4   Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be

5   served and filed within fourteen (14) days after service of the objections. The parties are

6   advised that failure to file objections within the specified time may waive the right to appeal

7   the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8

9

10   IT IS SO ORDERED.

11   Dated:    April 11, 2013          /s/ *Michael J. Seng*
                                   UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28