1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

11

## EASTERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17

| | |
|---|---|
| GENARO ANAYA-FERNANDEZ, | )    1:10-cv-01589 LJO-MJS HC |
|          Petitioner, | ) |
| | )    FINDINGS AND RECOMMENDATION |
|    v. | )    REGARDING PETITION FOR WRIT OF |
| | )    HABEAS CORPUS |
| BRENDA CASH, et al., | ) |
| | ) |
|          Respondents. | ) |
| | ) |

18
19
20
21
22

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Brenda Cash, as acting warden of California State Prison, Los Angeles County is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.  BACKGROUND

23
24
25
26
27
28

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his conviction by jury trial on February 7, 2008, for assault with intent to commit rape during the commission of a first degree burglary and forcible rape, in addition to sentencing enhancements imposed because Petitioner personally used a deadly and dangerous weapon,

1    and had committed a burglary prior to commission of the rape and suffered three prior serious

2    felony convictions. (Clerk's Tr. at 199-200.) Petitioner was sentenced to a total term of 76

3    years to life. (Id.)

4         On December 9, 2009, the California Court of Appeal, Fifth Appellate District, affirmed

5    the judgment of the trial court. (Lodged Doc. 4.) Petitioner filed a petition for review in the

6    California Supreme Court.  The petition was summarily denied on February 24, 2010. (Lodged

7    Doc. 6.)

8         On August 17, 2010, Petitioner filed the instant federal habeas corpus petition.

9    Petitioner raised a single claim for relief, namely, that the trial court's admission of prior sexual

10   offenses committed by Petitioner rendered his trial fundamentally unfair in violation of the

11   Fourteenth Amendment. (Pet., ECF No. 1.) On December 28, 2010, Respondent filed an

12   answer to the petition. (Answer, ECF No. 14.) Despite requesting extensions of time, Petitioner

13   did not file a traverse to the answer.

14   **II.    STATEMENT OF THE FACTS[1]**

15        On December 15, 2006, Doe, 23 years old, was living in a small house
     in Stanislaus County with her mother and father. At about 8:30 a.m., after her
16   mother left for work and her father went out to run errands, Doe heard a knock
     on the front door. Defendant was standing outside the front door with what
17   appeared to be a package or box and said he had a delivery for her father.
     When Doe opened the door, defendant suddenly pushed his way into the house
18   and came after her. Doe ran to the bathroom, seizing a kitchen knife as she
     fled. Defendant gained entry into the bathroom, hit Doe on the mouth and
19   forced her to remove her clothes. He told her to remove a tampon and shave
     her pubic area. When defendant pulled down his pants, he already had a
20   condom on. Defendant then held the kitchen knife to Doe's throat and raped
     her.
21
          When Doe's father returned home about 10 minutes later, he found Doe
22   on the bathroom floor wrapped in a towel, in shock, crying and screaming
     hysterically. He called 911 and police officers and an ambulance arrived.
23
     Doe gave a description of the rapist to police officers, who prepared a
24   composite drawing of the suspect. She told the police officers that the rapist
     was a white male who spoke broken English, approximately middle 30's to early
25   40's in age, medium build, and that he was dressed in mostly black clothing,
     including a black hooded sweatshirt, dark pants or sweatpants, and a black
26

27   _____
          [1]The Fifth District Court of Appeal's summary of the facts in its December 9, 2009 opinion is presumed
28   correct. 28 U.S.C. §§ 2254(e)(1).

baseball cap or beanie.[2] Doe provided further details of defendant's description, including that he had dark eyes, a box-shaped face, and was wearing a ring. A photo of the composite drawing was placed in the local newspaper and the police received several tips, based on which they created a series of photo lineups. Doe, however, was unable to identify anyone in these photographs.

Nearly nine months later, police received another anonymous tip. The information enabled them to create a new photo lineup, which included a photograph of defendant. Viewing this lineup, Doe immediately identified defendant. She started shaking and pointed to the photograph of defendant, saying "[t]hat's him, that's him" and "I'll never forget that face." Although Doe had many nightmares about the rape, she testified that "[t]he rape is real and his face is real," and she believed that she would never be able to get rid of the memory of his face.

Defense counsel argued at trial that Doe must have mistakenly identified defendant as the man who raped her, emphasizing that defendant is of Hispanic descent and, moreover, according to the testimony of defendant's sister, Luz Juaregui, and defendant's ex-wife, G.A., defendant had tattoos all over his body, including on his arms, neck, back and thighs. Ms. Juaregui and G.A. also testified that defendant's English was not very good, that he was hard to understand, and that he never wore jewelry.

Over defendant's objections, the trial court allowed the jury to hear evidence of defendant's prior sexual crimes of attempted spousal rape. G.A. testified that in 2001, while she and defendant were separated and a restraining order was in place, defendant came into her home at 2:45 a.m. and attempted to rape her three times over the course of one night. Defendant had apparently been there earlier in the day to visit the children, but had left. G.A. testified in 2001 that she saw defendant leave, she locked the doors and he did not have permission to return. When defendant suddenly appeared in G.A.'s home at 2:45 a.m., she was surprised and said, "What are you doing here, didn't I tell you to leave." Defendant briefly spoke to G.A. about the children and asked for a second chance in their relationship; then defendant began demanding sex. G.A. said no, and defendant said "he could make [her]" and he proceeded to physically force himself on G.A. G.A. testified that she "just tried to keep [her] legs closed" and tried biting and hitting him with anything in reach "to get him off of [her]." G.A. was able to fight him off during three separate physical assaults, and she also succeeded in calling 911. Defendant was convicted of three counts of attempted spousal rape, one count of battery on a spouse, and he served time in prison for these offenses.

The charges against defendant were, in count 1, assault with intent to commit rape during the commission of a first degree burglary (§ 220, subd. (b)), and, in count 2, forcible rape (§ 261, subd. (a)(2)). [6] The jury found defendant guilty of both counts, and also found true the special allegation that defendant had used a deadly weapon, i.e., a knife (§ 12022, subd. (b)). The trial court thereafter found true the further allegation that defendant had three prior serious felony convictions for purposes of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). On July 3, 2008, defendant was sentenced to 75 years to life on count 2, with a consecutive one-year sentence imposed for the

---

[2] Each of the four times that police had contact with defendant prior to his arrest, he was wearing black or dark clothing similar to what Doe described.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

personal weapon use enhancement, for a total term of 76 years to life. The trial court imposed a term of 46 years to life on count 1, which sentence was to run concurrently with the sentence on count 2, but was also stayed pursuant to section 654. Defendant's timely appeal followed.

(Lodged Doc. 4.)

III.    **DISCUSSION**

   A.    **Jurisdiction and Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

   1.    Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133,  141 (2005) citing Williams, 529 U.S. at 405-06.  "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general

standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an unreasonable application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

### 2.  Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006).  Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion,"does not require that there be an opinion from the state court explaining the state court's reasoning." Harrington, 131 S. Ct. at 784-85. "Where a state court's decision is

unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." <u>Id.</u> ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

<u>Harrington</u> instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." <u>Id.</u> To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

<u>Id.</u> at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." <u>Id.</u> at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." <u>Id.</u> (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90 (1977).

3.   <u>Prejudicial Impact of Constitutional Error</u>

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 121-22 (2007) (holding that the <u>Brecht</u> standard applies whether or not the state court recognized the

error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002);  Musalin v. Lamarque, 555 F.3d at 834.

## IV.   REVIEW OF CLAIM

### A.   Admission of Propensity Evidence in the Form of Prior Sexual Offenses

Petitioner alleges that his constitutional rights to a fair trial and due process of law were violated due to the admission of his prior sexual offenses during trial.

#### 1.   State Court Decision

Petitioner presented this claim on direct appeal which was denied in a reasoned decision by the Fifth District Court of Appeal and summarily denied by the California Supreme Court.  Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion.  See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the appellate court explained:

I. Trial Court Properly Admitted Evidence of Prior Sexual Offenses

Defendant contends the trial court abused its discretion in admitting the evidence of the prior sexual offenses. We disagree.

The evidence was admitted under Evidence Code section 1108, subdivision (a), which provides as follows: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's

1   commission of another sexual offense or offenses is not made inadmissible by
    Section 1101, if the evidence is not inadmissible pursuant to Section 352." This
2   section "authorizes the admission of evidence of a prior sexual offense to
    establish the defendant's propensity to commit a sexual offense, subject to
3   exclusion under Evidence Code section 352." (People v. Lewis (2009) 46
    Cal.4th 1255, 1286.) Evidence Code section 1108 was intended to provide the
4   trier of fact in a sex offense case "the opportunity to learn of the defendant's
    possible disposition to commit sex crimes." (People v. Falsetta (1999) 21
5   Cal.4th 903, 915.)

6       Evidence Code section 1108 expressly permits trial courts to exclude
    evidence of other sexual crimes under Evidence Code section 352. Evidence
7   Code section 352 provides that "[t]he court in its discretion may exclude
    evidence if its probative value is substantially outweighed by the probability that
8   its admission will (a) necessitate undue consumption of time or (b) create
    substantial danger of undue prejudice, of confusing the issues, or of misleading
9   the jury." In determining whether to admit evidence under Evidence Code
    section 1108, trial courts "engage in a careful weighing process under
10  [Evidence Code] section 352." (People v. Falsetta, supra, 21 Cal.4th at p.
    916-917.) "Rather than admit or exclude every sex offense a defendant
11  commits, trial judges must consider such factors as its nature, relevance, and
    possible remoteness, the degree of certainty of its commission and the
12  likelihood of confusing, misleading, or distracting the jurors from their main
    inquiry, its similarity to the charged offense, its likely prejudicial impact on the
13  jurors, the burden on the defendant in defending against the uncharged offense,
    and the availability of less prejudicial alternatives to its outright admission, such
14  as admitting some but not all of the defendant's other sex offenses, or excluding
    irrelevant though inflammatory details surrounding the offense." (Id. at p. 917.)
15
        Here, defendant claims that the trial court abused its discretion because
16  allegedly the prejudicial effect of the evidence of other sexual crimes greatly
    outweighed its probative value. We review a trial court's decision to admit
17  evidence of prior sexual offenses under an abuse of discretion standard.
    (People v. Wesson (2006) 138 Cal.App.4th 959, 969.) A trial court enjoys broad
18  discretion under Evidence Code sections 352 and 1108, and its ruling will not
    be disturbed on appeal "'"unless the trial court exercised its discretion in an
19  arbitrary, capricious, or patently absurd manner that resulted in a manifest
    miscarriage of justice." [Citation.]'" (People v. Lewis, supra, 46 Cal.4th at p.
20  1286; People v. Rodrigues (1994) 8 Cal.4th 1060, 1124.)

21      We find no abuse of discretion in the present case. The probative value
    of the evidence to show defendant's propensity to commit such violent sexual
22  crimes is strong. The prior offenses were not unreasonably remote in time since
    they were committed only five years prior to the rape of Doe. There were also
23  basic similarities in the two cases. In the 2001 attempts to commit spousal rape
    as well as in the instant rape case, the victims were young women in their early
24  to mid-twenties, and both were at home alone--which fact was apparently
    known to defendant. Additionally, in both cases defendant used a ruse to get
25  the women to initially lower their guard. That is, with G.A., he claimed he was
    there in the middle of the night to discuss their children. With Doe, defendant
26  pretended to have a package he was delivering to her father. And of course, in
    both cases defendant used force to sexually assault each victim.
27
        Additionally, there was little likelihood of undue prejudice. As the trial
28  court correctly noted, this was not a situation "where the prior [was] so much

more inflammatory [than] the current case that it would be unfair to have it presented." Rather, the trial court's assessment was that both the prior and current offenses were at "about the same level of seriousness," and there was no reason to believe there would be any jury confusion. Nor was it likely the jury would try to punish defendant for the past crimes, because the evidence made clear that defendant was convicted and went to prison for the prior offenses.

Defendant argues the prior sex crimes evidence was unduly prejudicial because it was used to make up for the prosecution's "shaky identification evidence." We disagree. The evidence identifying defendant as the one who raped Doe was more than sufficient to support the conviction. Among other things, when Doe saw defendant in the last photo lineup, her firm reaction was "[t]hat's him, that's him," and she identified him once again in court and unequivocally asserted that she could never forget that face. The jury was entitled to fully credit her testimony. Whatever minor inconsistencies there may have been in her description, they did not undermine the convincing nature of her positive identification of defendant. Since there was strong and solid evidence to identify defendant as the rapist, we reject defendant's contention that the prior crimes evidence were used by the prosecutor to overcome a purported lack of evidence of identity.

We conclude there was nothing arbitrary or capricious in the trial court's determination that the prior sexual assault evidence was admissible. The trial court went through the weighing process of Evidence Code section 352 and made a reasonable decision. Defendant has failed to show any error or abuse of discretion, much less one that resulted in a miscarriage of justice.

For the same reasons, we reject defendant's parallel claim that admission of the prior sexual offenses denied him due process. Defendant has not shown any error occurred that rendered the trial fundamentally unfair. (People v. Partida (2005) 37 Cal.4th 428, 431-432 [trial court's error in failing to exclude evidence pursuant to Evid. Code, § 352 objection "rises to the level of a due process violation only if it renders the trial fundamentally unfair"].) As noted, the prior sexual crimes evidence was properly admitted after the trial court undertook the weighing process of Evidence Code section 352, and the trial court reasonably concluded that the probative value of that evidence outweighed any risk of undue prejudicial effect. Under such circumstances, the admission of "propensity" evidence under Evidence Code section 1108 plainly did not violate due process. (People v. Lewis, supra, 46 Cal.4th at p. 1289; People v. Falsetta, supra, 21 Cal.4th at p. 917.)

In summary, defendant's challenge to his conviction on count 2 of forcible rape is without merit and we affirm the conviction.

(See Lodged Doc. 4.)

2.      Propensity Evidence

As stated above, Petitioner claims the admission of evidence of prior acts of sexual assault violated his due process rights. Petitioner is only entitled to relief if he shows that in upholding the introduction of the propensity evidence the California Court of Appeal contradicted or unreasonably applied clearly established federal law, as determined by the

1   Supreme Court of the United States. See 28 U.S.C. § 2254(d). In Estelle v. McGuire, 502 U.S.

2   62, 75 n. 5, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991), the Supreme Court expressly refused

3   to determine whether the introduction of prior crimes evidence to show propensity to commit

4   a crime would violate the Due Process Clause. Id. ("Because we need not reach the issue,

5   we express no opinion on whether a state law would violate the Due Process Clause if it

6   permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.");

7   see also Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006) ("Estelle expressly left this

8   issue an 'open question'"). Because the Supreme Court has specifically declined to address

9   whether the introduction of propensity evidence violates due process, Petitioner lacks the

10  clearly established federal law necessary to support his claims. Id.; see also Mejia v. Garcia,

11  534 F.3d 1036, 1046-47 (9th Cir. 2008) (relying on Estelle and Alberni and concluding that the

12  introduction of propensity evidence under California Evidence Code § 1108 does not provide

13  a basis for federal habeas relief, even where the propensity evidence relates to an uncharged

14  crime); Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (The Supreme Court "has

15  not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence

16  constitutes a due process violation sufficient to warrant issuance of the writ.").

17          AEDPA dictates that a district court may not grant habeas relief unless the state court

18  decision was contrary to, or an unreasonable application of, clearly established federal law

19  as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). Consequently, in the

20  absence of Supreme Court precedent stating the admission of evidence of prior acts violates

21  due process, Petitioner cannot satisfy this requirement. See Alberni, 458 F.3d at 866-67.

22          The California Court of Appeal decision denying this claim was not contrary to clearly

23  established Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief.

24  **V.    FINDINGS AND RECOMMENDATIONS**

25          Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be

26  DENIED with prejudice. It is further recommended that the Clerk of Court be directed to enter

27  judgment.

28          This Findings and Recommendation is submitted to the assigned District Judge,

U.S. District Court
E. D. California

-10-

pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being

served with the Findings and Recommendation, any party may file written objections with the

Court and serve a copy on all parties.  Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be

served and filed within fourteen (14) days after service of the objections. The parties are

advised that failure to file objections within the specified time may waive the right to appeal

the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   April 11, 2013                            /s/ *Michael J. Seng*
                                                 UNITED STATES MAGISTRATE JUDGE